Shayna Fernandez Watts (027342)
FERNANDEZ WATTS LAW PLLC
1801 E. Camelback Rd. Ste. 102 #1057
Phoenix, Arizona 85016
Phone: (602) 760-5100
Fax: (602) 760-5130
Email: Shayna@FernandezWattsLaw.com
Attorney for Plaintiffs

FERNANDEZ WATTS LAW, PLLC
1801 E. Camelback Rd. Ste. 102 #1057
Phoenix, Arizona 85016

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Georgette Taylor and Matthew Taylor, husband and wife, | No. _____ |
| Plaintiffs, | **COMPLAINT** |
| v. | (Jury Trial Demanded) |
| Infusion Software, Inc. (dba KEAP), | |
| Defendant. | |

This is an action under Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978 to correct unlawful employment practices on the basis of sex (female, pregnancy) and religion (non-Mormon) and to provide appropriate relief to Plaintiff Georgette Taylor for the illegal actions of her employer, Defendant Infusion Software, Inc.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Georgette Taylor is a married woman who resides in Arizona and she is a former employee of Infusion Software, Inc.

2.      Plaintiff Matthew Taylor is Ms. Taylor's husband.

3.      Defendant Infusion Software, Inc. is a Delaware corporation doing business in Arizona as KEAP.

FERNANDEZ WATTS LAW, PLLC
1801 E. Camelback Rd. Ste. 102 #1057
Phoenix, Arizona 85016

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5.      Each defendant named herein caused events or omissions in Arizona that gave rise to Plaintiffs' damages and are, for that and other reasons, subject to the personal jurisdiction in this Court.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## GENERAL ALLEGATIONS

7.      Defendant hired Ms. Taylor in May 2012, reporting to Marc Chesley, the Chief Technology Officer of Infusionsoft.

8.      Mr. Chesley met Ms. Taylor on a plane and recruited her to work for Infusionsoft.

9.      Ms. Taylor worked as a Net Promoter Score Manager, reporting to Mr. Chesley from May 2012 to August 2013.

10.      Ms. Taylor excelled in her role and received praise for her work performance.

11.      Ms. Taylor became pregnant and took maternity leave from August 2013 until October 2013.

12.      2 weeks before Ms. Taylor went out on maternity leave, Mr. Chesley took ownership of the NPS business function away from her and gave it to another consultant, Elizabeth Pitt.

13.      Ms. Pitt had no children.

14.      Ms. Pitt was given the title of Senior Vice President to manage the NPS team and program Ms. Taylor created.

15.      Ms. Pitt was promoted to Chief Customer Officer soon thereafter.

16.      Ms. Taylor was never offered a similar level job.

FERNANDEZ WATTS LAW, PLLC
1801 E. Camelback Rd. Ste. 102 #1057
Phoenix, Arizona 85016

17.     Upon returning from her first maternity leave in October 2013, Ms. Taylor assumed a different position as Strategic Communications Advisor, still reporting to Mr. Chesley.

18.     The job was demanding, but Ms. Taylor did remarkable work and received numerous accolades including the following feedback:

- On January 27, 2014, Mr. Chesley sent an email to Ms. Taylor regarding the MDV Briefing saying, "Awesome! I love it."
- On June 18, 2014, Mr. Chesley sent an email to Ms. Taylor regarding Dreaming and the Community saying, "Nice! I love how you make things happen. ☺"
- On July 24, 2014, Mr. Chesley sent Ms. Taylor a text message regarding the TEDx presentation that Ms. Taylor had put together for M. Chesley saying, "Thank you, Georgette! No way I could have done this without you."
- On August 27, 2014, Mr. Chesley sent an email to Ms. Taylor regarding his requested feedback on a "what it would it take" project saying, "THIS… IS… FREAKING… AWESOME!!!!!"
- On September 3, 2014, Mr. Chesley sent an email to Ms. Taylor regarding the Campaign for SIM saying, "You're doing a great job and please know how much I appreciate you and all you do."
- On September 8, 2014, Mr. Chesley sent an email to Ms. Taylor regarding the Final QPD (Quarterly Planning Document) saying, "Great job driving this project, Georgette. Well done!"
- On September 30, 2014, Mr. Chesley verbally gave Ms. Taylor praise for the keynote presentation she wrote for the Phoenix Mobile Festival and stated it went great.
- In her October 2014 review, Mr. Chesley stated in Ms. Taylor was "instrumental in [his] successful TEDx talk and promoting the accompanying video."
- On November 14, 2014, Mr. Chesley sent an email to Ms. Taylor saying, "You rock."
- On December 10, 2014, in response to an email and report Ms. Taylor sent on December 4, 2014, Kyle Leavitt, VP, Product, complimented Ms. Taylor on the best QPD report he had ever seen. This report is used by the executive team every quarter and is the most important document required to set strategy for the year and the quarters leading up to the end of the year. Ms. Taylor managed this report for three years, the entire time she worked at Infusionsoft. Leavitt said:

3

FERNANDEZ WATTS LAW, PLLC
1801 E. Camelback Rd. Ste. 102 #1057
Phoenix, Arizona 85016

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"Georgette, I want to compliment you on the compilation of the QPD. This QPD is by far the most concise, consumable, and effective QPD I've ever seen.  Thank you! -K"

19.     Ms. Taylor then took maternity leave in December 2014 for the birth of her twins.

20.     Upon returning from maternity leave in February 2015, Infusionsoft moved Ms. Taylor's office to a different building which disconnected from her assigning supervisor, Mr. Chesley, and his entire team.

21.     Further, Mr. Chesley did not try to communicate with Ms. Taylor upon her return, did not respond to her emails to him, and would not accept or schedule the weekly meetings required according to the terms of her job.

22.     For example, on February 17, 2015, the first day Ms. Taylor was back in the office from maternity leave, Ms. Taylor was supposed to meet with Mr. Chesley and Ginger Ghormley, his executive assistant. But instead, Ms. Ghormley met with Ms. Taylor and passed along the message that Mr. Chesley wanted Ms. Taylor to manage his relationship as a Board member of the Arizona Technology Council.

23.     Mr. Chesley had asked Ms. Ghormley to forward Ms. Taylor all his emails and Ms. Ghormley told Ms. Taylor that Mr. Chesley told her that should keep her busy.

24.     Ms. Ghormley also asked Ms. Taylor if she could do consulting work so that Ms. Taylor could be at home with the babies.

25.     On February 19, 2015, Ms. Taylor had her first meeting with Mr. Chesley since returning from maternity leave wherein Mr. Chesley asked Ms. Taylor to triage decisions for him. They also discussed but did not solidify Ms. Taylor's Big 3 in this meeting.

26.     Big 3 are the three responsibilities that are critical to the success of Ms. Taylor's role and the business, and they are used in quarterly evaluations. Every employee in the company had Big 3 responsibilities monitored by their supervisory.

27.     Ms. Taylor sent a follow up email to Mr. Chesley about her Big 3 which she needed to report on every week in an internal system but Mr. Chesley never responded to her emails.

28.     On March 13, 2015, Ms. Taylor sent an email to Mr. Chesley asking questions about the Arizona Technology Council. His only response was "Good, look forward to discussing." But when Ms. Taylor and Mr. Chesley later met, he would not answer any questions.

29.     On March 19, 2015, Ms. Taylor had a phone call meeting with Mr. Chesley to go over the questions she needed him to answer to move forward with managing Mr. Chesley's job on the Arizona Technology Council as a board member.

30.     Mr. Chesley did not give Ms. Taylor a response to any of her questions at the meeting and still would not discuss her Big 3.

31.     March 31, 2015- April 2, 2015 was the week of ICON, a yearly event for customers.

32.     Mr. Chesley told Ms. Taylor to be at the event, but then ignored her texts and avoided her the entire time.

33.     As his Strategic Communications Advisor, Ms. Taylor also should have been part of all interviews with analysts and investors that Mr. Chesley was conducting but she was not.

34.     Prior to going out on maternity leave, Ms. Taylor had weekly or at least twice monthly meetings with Mr. Chesley, Mr. Chesley would communicate with her otherwise frequently and consistently.

35.     On April 8, 2015, Mr. Chesley called a meeting and told Ms. Taylor that Infusionsoft was terminating her employment.

36.     Ms. Taylor performed her job well for the company and received only positive performance reviews and comments during her tenure, so Ms. Taylor asked why she was being terminated.

5

FERNANDEZ WATTS LAW, PLLC
1801 E. Camelback Rd. Ste. 102 #1057
Phoenix, Arizona 85016

37.     Mr. Chesley said Ms. Taylor was being terminated because he needed money for a QuickBooks Integration.

38.     Mr. Chesley said it was nothing to do with performance.

39.     The explanation did not make sense because Infusionsoft had just obtained significant funding.

40.     Mr. Chesley also said during this meeting that he did not want Ms. Taylor to go on COBRA so he asked how long she needed to get a job.

41.     Ms. Taylor told him she did not know.

42.     Mr. Chesley told Ms. Taylor she would have six months to find another job.

43.     Ms. Taylor continued doing her job after being told she was going to be terminated.

44.     Three months later, on June 30, 2015, Ms. Taylor received an email in her personal email from Mr. Ghormley, Mr. Chesley's executive assistant, that July 1, 2015 would be her last day at the company.

45.     On December 22, 2015, Mr. Chesley was notified that he won the Sun Devil Select award based on the application Ms. Taylor wrote and submitted for him prior to being terminated, another sign of her outstanding work performance.

46.     Ms. Taylor is not Mormon.

47.     Upon information and belief, Mr. Chesley is Mormon as are many of the people on Defendant's leadership team.

48.     Upon information and belief, Infusionsoft had a policy of pushing out women in leadership roles who became pregnant, consistent with Mormon teachings.

49.     Other female employees who became pregnant while working at Infusionsoft were also terminated.

50.     Infusionsoft wrongfully terminated Ms. Taylor after she took maternity leave for the birth of twins from December 2014 – February 2015.

FERNANDEZ WATTS LAW, PLLC
1801 E. Camelback Rd. Ste. 102 #1057
Phoenix, Arizona 85016

51.     Ms. Taylor timely filed a charge of discrimination with the EEOC relating to the matters complained of herein.

52.     On February 11, 2022, the EEOC issued Ms. Taylor a Notice of Right to Sue.

53.     Defendant is vicariously liable for the actions of Ms. Taylor's supervisor under the doctrine of respondeat superior.

## CLAIMS FOR RELIEF

### COUNT I - Violations of Title VII on the Basis of Sex, Pregnancy, and Religion

54.     Plaintiffs incorporate herein by reference each and every preceding allegation as though fully set forth herein.

55.     Title VII makes it unlawful for an employer such as Defendant to "fail to refuse to hire or to discharge an individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

56.     The Pregnancy Discrimination Act of 1978 amended Title VII to prohibit sex discrimination on the basis of pregnancy in any aspect of employment including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits, such as leave and health insurance, and any other term or condition of employment.

57.     Defendant and its employees engaged in discrimination made unlawful under Title VII and the PDA through their improper treatment of Plaintiff because of her sex, pregnancy, and religion.

58.     Defendant and its employees subjected Ms. Taylor to a hostile work environment because of Ms. Taylor's sex, pregnancy, and religion.

59.     The effect of the practices complained of above has been to deprive Ms. Taylor of equal employment opportunities.

60.     The unlawful employment practices complained of above were intentional.

61.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Taylor.

62.    Plaintiffs have suffered damages as a result of Defendant's unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues and claims so triable.

## Relief Sought

WHEREFORE, Plaintiffs respectfully requests that the Court:

a)    Enter judgment for Plaintiffs and against Defendant on all counts;

b)    Award Plaintiffs all recoverable damages, in an amount to be proven at trial;

c)    Award Plaintiffs punitive and/or exemplary damages on all claims under which such damages are available under law in an amount to be determined at trial;

d)    Award Plaintiffs their attorneys' fees and costs incurred herein, on all the bases upon which such expenditures are compensable to Plaintiffs alleged herein;

e)    Award Plaintiffs pre and post judgment interest at the highest rate allowed by law; and

f)    Award Plaintiffs any other relief that the Court deems just and proper under the circumstances.

DATED this 12 day of May 2022.

FERNANDEZ WATTS LAW PLLC

/s/ *Shayna Fernandez Watts*
1801 E. Camelback Rd. Ste. 102 #1057
Phoenix, Arizona 85016
Attorney for Plaintiffs

FERNANDEZ WATTS LAW, PLLC
1801 E. Camelback Rd. Ste. 102 #1057
Phoenix, Arizona 85016